IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE,<br>　　　　Debtor.<br><br>KYLE EVERETT, Chapter 11 Trustee,<br>　　　　Plaintiff and Appellee,<br>　　v.<br>PACIFIC TRADING VENTURES, LTD., and VIRGINIA JILL WORSLEY,<br>　　　　Defendants and Appellants. | Case No.  19-cv-03348-MMC<br>Bankruptcy Case No. 14-54232-MEH<br><br>**DECISION AFFIRMING JUDGMENT OF BANKRUPTCY COURT** |

Before the Court are Defendants/Appellants Pacific Trading Ventures, Ltd.'s ("PTVL") and Virginia Jill Worsley's ("Worsley") (collectively, "Appellants") appeal from a judgment entered May 28, 2019, in the United States Bankruptcy Court, in favor of Kyle Everett ("Everett"), the Chapter 11 trustee ("the Trustee") for the estate of the debtor, Pacific Thomas Corporation ("PTC").  Having read and considered the parties' respective briefs and the record on appeal, the Court rules as follows.

**BACKGROUND**

**A.    Factual Background**

PTC, at all relevant times, owned a number of real properties (hereinafter, "the Premises"), including a self-storage facility.  See Doc. No. 1 ¶¶ 1-2.[1]  At all relevant

---

[1] Unless otherwise noted, all citations to docket entries are to In re Pacific Thomas Corporation, No. 14-5114-MEH (Bankr. N.D. Cal. 2014)

times, Worsley was the sole shareholder of PTVL, as well as the "owner" and Chief Operating Officer of Pacific Trading Ventures dba Safe Storage Management Company ("PTV"). See id. at ¶ 14; see also Doc. No. 264 at 2 n.11.

In 2003, PTC and PTVL entered into a Management Agreement by which PTVL agreed to provide property management services for PTC at a portion of the Premises, including a self-storage facility located thereon. See Trial Ex. 16. In 2011, PTC and PTV entered into an Amended Management Agreement, modifying the terms of compensation. See Trial Ex. 17.[2] In the interim, in 2005, PTC and PTV executed a Lease Agreement ("2005 Lease"), by which PTC leased to PTV various portions of the Premises comprising the self-storage facility. See Trial Ex. 11. Next, in 2008, PTC and PTV executed another Lease Agreement, by which PTC leased to PTV a portion of the real property covered by the 2005 Lease. See Trial Ex. 12. Thereafter, in 2010, PTC and PTV executed a document extending the 2005 Lease for a five-year term. See Trial Ex. 13. Lastly, in 2012, PTC and PTV amended the 2005 Lease. See Trial Ex. 14.

**B.    Procedural History**

On August 6, 2012, PTC filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. See In re Pacific Thomas Corporation, No. 12-46534-MEH, Doc. No. 1 (Bankr. N.D. Cal. Aug. 6, 2012). Approximately five months later, on January 16, 2013, Everett was appointed the acting Chapter 11 trustee of the PTC bankruptcy estate. See id., Doc. No. 220 (Bankr. N.D. Cal. Jan. 16, 2013).

Thereafter, on April 11, 2013, the Trustee commenced an adversary proceeding against Appellants, by way of a complaint seeking declaratory relief, an accounting, turnover of amounts due the bankruptcy estate, and injunctive relief. See Doc. No. 1. In the complaint, the Trustee alleged Appellants, subsequent to the filing of the petition,

---

[2] Although, as noted, the Management Agreement was executed by PTC and PTVL, not PTV, there is nothing in the record before the Court to suggest the substitution of PTV as a signatory to the Amended Management Agreement is significant, and both the Bankruptcy Court and the parties tend to treat the two entities as interchangeable.

withheld funds owed under the Management Agreement and sought an award in the amount of those funds as well as a declaration that the 2005 Lease, under which Appellants claimed entitlement to the funds, was unenforceable, in that it constituted "part of a scheme to siphon funds" belonging to the bankruptcy estate. See id. ¶ 2.

Following trial on the Trustee's claims, the Bankruptcy Court issued its decision and entered judgment thereon, by which the 2005 Lease was declared invalid and the Trustee was awarded the sum of $566,685. See Doc. Nos. 210, 211. Subsequently, the Ninth Circuit vacated the judgment and remanded the matter for further proceedings, noting the Bankruptcy Court "did not find that PTC and PTV's acts and conduct established they had a mutual and unequivocal intent to rescind, as required by California's law of contract rescission." See In re Pacific Thomas Corporation, 716 F. App'x 698, 699 (9th Cir. 2018).

Thereafter, the Bankruptcy Court conducted a bifurcated trial, the first stage addressing "whether [the] parties' lease agreements are void under principles of California contract law, as remanded by the Ninth Circuit," see Doc. No. 362, and the second stage addressing the sum due the Trustee, see Doc. No. 364. At the first stage, the Bankruptcy Court found the 2005 Lease was "mutually rescinded by PTC and PTV," see Doc. No. 264 at 9:18-19, and, at the second stage, awarded judgment in favor of the Trustee in the amount of $224,608, see Doc. No. 327 at 17:24.

By the instant appeal, Appellants argue the Bankruptcy Court erred in finding the 2005 Lease invalid and awarding judgment in the amount of $224,608.[3]

**LEGAL STANDARD**

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See In re Gebhart, 621 F.3d 1206, 1209 (9th Cir. 2010).

---

[3] Although Appellants also list as an issue the sufficiency of the evidence on remand to show the 2005 Lease was entered into "with an intent to deceive a third party" (see Appellants' Opening Br. at 1:18), the Court has not addressed that question, as the Bankruptcy Court finding thereon was in favor of Appellants.

1  Mixed questions of law and fact are reviewed de novo.  See In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).  With respect to findings of fact, the appellant must demonstrate that any challenged findings were clearly erroneous.  See In re Huntington Ltd., 654 F.2d 578, 583 (9th Cir. 1981).  "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed."  Fisher v. Tucson Unified Sch. Dist., 652 F.3d 1131, 1136 (9th Cir. 2011) (internal quotation and citation omitted).  A court's factual determination is clearly erroneous only if it is illogical, implausible, or lacks "support in inferences that may be drawn from facts in the record."  United States v. Hinkson, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (internal quotation and citation omitted).  "A mere showing that the bankruptcy court could have reached another conclusion based on the evidence presented is insufficient."  In re Huntington Ltd., 654 F.2d at 583.

A bankruptcy court's decision may be affirmed "on any ground fairly supported by the record."  See In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

## DISCUSSION

As noted, the instant appeal raises two issues: (1) whether the Bankruptcy Court erred in finding the 2005 Lease invalid and (2) whether the Bankruptcy Court properly calculated the amounts owed.  The Court addresses each issue in turn.

**A.  Validity of the 2005 Lease**

The central issue on appeal concerns the parties' dispute as to whether the Management Agreement or the 2005 Lease governs PTC's and PTV's relationship as to their respective rights and obligations and, in particular, their rights and obligations pertaining to the self-storage facility.  The Bankruptcy Court, as noted, found PTC and PTV mutually rescinded the 2005 Lease, see Doc. No. 264 at 9:18-19, thereby leaving the Management Agreement as the operative contract.

As the Ninth Circuit has recognized, "California's law of contract rescission" requires a finding that the parties' "acts and conduct establish[ ] they had a mutual and unequivocal intent to rescind."  See In re Pacific Thomas Corp., 716 F. App'x at 698

4

(citing Pennel v. Pond Union Sch. Dist., 29 Cal. App. 3d 832, 837 (1973)).  Here, the evidence suffices to support the Bankruptcy Court's finding that PTC and PTV mutually rescinded the 2005 Lease.

In that regard, the Bankruptcy Court relied primarily on the parties' "conduct reflected in financial and corporate records."  See Doc. No. 264 at 8:3-4.  In particular, as the Bankruptcy Court found, neither PTC's nor PTV's QuickBooks reflected financial operations consistent with the 2005 Lease.  See id. at 4:12-13.[4]  Rather, between 2005 and 2011, each companies' QuickBooks demonstrate compliance with the Management Agreement, see id. at 4:14-15, and PTC's tax returns, which were prepared during the same period of time and filed under penalty of perjury, are consistent with the QuickBooks data, see id. at 4:19-20.

In sum, the Bankruptcy Court did not err in finding the 2005 Lease invalid.

**B.    Calculation of Amounts Owed**

The remaining issues are the Bankruptcy Court's calculation of the withheld amount owed to the Trustee under the Management Agreement and its denial of a claim by Appellants for monies allegedly owed to them by the bankruptcy estate.

The Trustee sought turnover of $376,522, comprising amounts withheld by PTV and which, according to the Trustee, "do not appear to be legitimate estate operating expenditures."  See Doc. No. 327 at 3:17; 4:5-7 (internal quotations omitted).  Appellants contended that a portion of said amount was for the benefit of either PTC or the bankruptcy estate.  See id. at 4:14-19; see also Appellants' Opening Br., Ex. A at 4.  Additionally, Appellants, by submission of a post-trial brief, asserted a claim for affirmative relief, specifically, unreimbursed sums Worsley stated she personally expended on behalf of the debtor, unpaid management fees due for capital expenditures, and payments turned over that assertedly constituted income from Worsley's separate

---

[4] QuickBooks is the accounting software by which the parties "recorded [their] financial transactions."  See id. at 4:14-15.

5

business ventures.  See Appellants' Opening Br., Ex. A at 7:11-13.

The Bankruptcy Court found the "Trustee established a claim for $224,608 against PTV for payments made by PTV from Debtor's funds that were either not legitimate operating expenses of Debtor or not authorized by the Bankruptcy Code or court, and thus did not benefit Debtor."  See Doc. No. 327 at 17:24-18:1.[5]  In arriving at such conclusion, the Bankruptcy Court applied various "adjustments" to the amounts claimed by the Trustee, as reflected in twenty-eight separate categories.  See id. at 17:24.  As to Appellants' claim for affirmative relief, the Bankruptcy Court found such claim had not been properly presented and, consequently, declined to consider that matter further.

Appellants now argue the Bankruptcy Court "overcalculated the turnover amount," specifically, that "the Trustee's Judgment against PTV for turnover should be set at zero, and PTV should be awarded $367,488.85."  See Appellants' Opening Br. at 22:5-6.  In challenging the Bankruptcy Court's calculations, however, Appellants essentially do no more than register their disagreement, and the Court finds the Bankruptcy Court sufficiently supported its conclusion, discussing each of the claimed expense categories in detail, accepting some and rejecting others, and arriving at a final award substantially less than the amount claimed by the Trustee.  With respect to the affirmative relief claimed, as the Bankruptcy Court noted, no counterclaim had been filed, "a supplemental brief is not the proper method to obtain affirmative recovery on an issue not raised" earlier, and, equally if not more importantly, no evidence was submitted at trial on which any finding could be based.  See id. at 18:14-17 (noting "the court considered the evidence presented by PTV").

Accordingly, the Bankruptcy Court did not err in calculating the award.

//

//

---

[5] The Bankruptcy Court also held PTV is authorized to "offset," against the Judgment, a management fee of $109,225, a sum to which the parties had reached agreement.  See id. at 18:1.

6

**CONCLUSION**

For the reasons stated, the judgment of the Bankruptcy Court is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: September 30, 2021

MAXINE M. CHESNEY
United States District Judge